## CANDLER *v.* BYFIELD; *et vice versa.*

1. The evidence authorized the finding in favor of the defendant upon his cross-action.

(*a*) The plaintiff, who alleged that the note which he sought to avoid and cancel was obtained by duress and was without consideration, had the burden of establishing his contentions by the preponderance of the evidence, and the evidence in the record authorized the jury to find that the plaintiff failed to carry the burden imposed upon him by law to rebut the presumption arising from the execution and delivery of the note, which was admitted.

(*b*) The evidence adduced upon the trial did not require (even if it is not in fact entirely insufficient to support) a finding that the plaintiff, either in the making or delivery of the original check or in the execution and delivery of the note substituted for the check, was subjected to any influence which subverted his will and substituted the will of any other person therefor. The plaintiff himself did not claim in his testimony that he was put in fear by the defendant or any one else.

(*c*) There is evidence in the record which warranted the defendant to conclude bona fide at the time of his acceptance of the check and note that he had suffered an actionable wrong for which he was legally entitled to compensation and which he might settle by compromise; and this fact itself might supply consideration, first for the check, and thereafter for the note substituted therefor, the latter being supported by an additional consideration in the thirty days extension of time for payment beyond that allowed by the original check.

2. The evidence, the exclusion of which by the court is assigned as error in the first and second grounds of the amended motion for a new trial, was relevant and admissible; but this court is not prepared to say that the exclusion of the testimony was sufficient error to require the grant of a new trial.

3, 4. The requests for instructions which were declined by the court, in so far as the same were legal and pertinent, were fully and fairly covered by the general charge.

No. 4478. JULY 18, 1925.

Equitable petition. Before Judge Humphries. Fulton superior court. July 17, 1924.

*Branch & Howard, Arnold & Arnold,* and *McClelland & McClelland,* for plaintiff.

*Slaton & Hopkins* and *Colquitt & Conyers,* for defendant.

RUSSELL, C. J. Walter T. Candler filed a petition asking for the cancellation of a note for $20,500, which he alleged had been executed by him and delivered to Clyde K. Byfield. The prayer for cancellation was based upon the ground that the note was void because it was obtained by duress; and it was likewise alleged that the promise to pay was without any consideration, and that for that reason the note was void. Upon Candler's petition Byfield was restrained from transferring or collecting the note, and a receiver was appointed to hold the note until the further order of the court. By amendment the plaintiff sought to recover a judgment against the defendant Byfield for $4500, consisting of $2000 alleged to have been paid on a check for $25,000 given by Candler to Byfield and $2500 represented by two notes which Byfield owed Candler for borrowed money. Byfield answered and alleged that the note for $20,500 was a legal, valid, and binding obligation voluntarily assumed by Candler in compromise and settlement of a just claim for damages for injuries inflicted upon the defendant by the plaintiff, and he asked judgment for the amount of the note, with interest. The petition of the plaintiff was more than once amended, but merely to the effect of amplifying and explaining the substantial contentions of the original petition, to the effect that the alleged note was altogether void because obtained by duress and unsupported by any consideration. Upon the trial the jury returned a verdict in favor of the defendant upon his cross-action, for the amount of the note, with interest and costs of suit. The plaintiff moved for a new trial. His motion was overruled, and he excepted. By cross-bill of exceptions the defendant assigned error upon a number of instructions given by the court in his charge to the jury, and upon the refusal of certain requests for instruction which were duly presented; though the defendant did not move for a new trial. The motion for a new trial filed by the plaintiff is based upon the usual general grounds and four assignments of error contained in an amendment to the motion.

1. As to the general grounds: We have carefully considered

the voluminous record of the evidence. It would be profitless to place upon our printed records all the noisome details of this mass of testimony. It suffices to say that if the testimony in behalf of the defendant is to be credited—and the verdict shows that the jury believed it, the defendant was entitled to recover upon the note of the plaintiff, who admitted the execution of the paper and defended only upon the grounds of duress and want of consideration. According to the testimony of Mrs. Byfield, the plaintiff, Candler, slipped into her cabin upon the steamship Berengaria at about twenty minutes to three o'clock in the morning and closed the door of the cabin behind him. She was asleep when he entered the room, but was awakened by the closing of the door. The room was completely dark. She supposed he was her husband, who had just a few minutes before left her room to say good night to some friends on the upper deck and with the declared intention of returning almost immediately. She testified that, after closing the door, Candler pulled down the bedclothing which covered her and pulled her gown up above her waist before she was thoroughly awake. Before he reached the bed she asked, "Is that you, Clyde?" but received no response, and when, in answer to the same question a second time propounded, the visitor said "uh huh," she recognized the voice of Candler, and she only had time to call him by name and ask him, "What do you mean?" when he placed one knee upon the bed and seized her so firmly and strongly by the shoulders that further resistance became useless, and she began crying. According to her testimony just at this time her husband opened the door (which Candler upon his entrance had closed), entered the room, turned on the light, and Candler fell from the bed to the floor claiming to be drunk, while her husband cried out, "Oh, my God! What are you doing? Why are you doing this?" A scream was heard by the night-watchman, who saw Byfield returning from the upper deck and saw him open the door of the stateroom. According to Mrs. Byfield, Candler's pants were unbuttoned. The night-watchman's testimony, which was taken in behalf of Mr. Candler, corroborates that of Byfield and his wife as to Byfield's exclamation as he entered the room in which Candler and Mrs. Byfield were alone at the time of the alleged assault. He testified: "I saw Mr. Byfield come down and go to his cabin, and he opened

the door, and as he opened the door he shouted out 'Oh, my God, whatever are you doing? Whatever made you do that?,' and with that he slammed the door."

It appears from the testimony that Byfield, after this exclamation, struck Candler with his fists. Candler struck him in return, and then Byfield rushed past Candler and began to beat his wife, to whom he gave a black eye and several bruises upon the nose, breasts, shoulders, and arms, in a frenzy of passion. The fist-fight was then resumed between Candler and Byfield, Byfield seemingly having gotten the worst of it, and was terminated by the interference of the ship's officers. Mrs. Byfield testified that her husband turned on the light when he entered the room, and that when Candler was turned around by the blow of Byfield his pants were unbuttoned, and that it was when Byfield turned to assault her that he buttoned his trousers; and this testimony was sufficient to explain to the satisfaction of the jury the testimony of the officers that when they came upon the scene a little later Candler appeared fully dressed and there was no exposure of his person. We have not stated all the details, but the above, taken from the testimony of the witnesses, were sufficient, in our opinion, to make the defendant believe in good faith that he had been grievously damaged by the plaintiff. He had the right to believe that he had suffered an actionable wrong. It afforded a basis amply sufficient in law for settlement or compromise, whatever may be thought of such a proceeding as a matter of choice or taste. Under these circumstances, as appears in the testimony which the jury had before them, Candler admitted that he had done injury to the defendant and his business and said he would pay $25,000 as compensation for the injury done. There was evidence to authorize Byfield to believe at that time that the sexual intercourse had been actually consummated, and he stated, even according to Candler, that he could have his wife, whom he denominated by a very foul and opprobrious term, accepted Candler's proposition, and was given a check on the Central Bank & Trust Company for $25,-000, which was shown to the inspector, Williams, and the watchman, Bartley, by Byfield, who asked the inspector to make a note of the transaction, as he did, and according to the testimony of Williams, who was present, admitted that the check was given for wrecking Byfield's life. We have stated only high points in the evidence;

and there are a number of circumstances which could be mentioned in corroboration of these features of the defendant's cross-action.

Many, if not all, of the above statements are contradicted by testimony in behalf of the plaintiff, who himself swore most positively that he made no assault upon Mrs. Byfield; that the latter had hurt her arm by falling at the dance a few minutes before, and that he merely entered the room to ask how she felt, and supposed that her husband was in the room at the time. He states that it was the invariable custom for either Candler or the Byfields to enter the apartment of the other to say good night or good morning at any time when the doors of their respective apartments were not fastened, and that he neither did nor said a single thing which could have injured or affronted either the defendant or his wife. His testimony supports his theory that the case is merely one of blackmail. But the jury are the sole judges of the testimony, and it is not within the power of this court, to revise their finding upon evidence if there is sufficient evidence to authorize the result reached by them. For this reason, it is our opinion that the testimony was ample to show that the note is not void for want of consideration.

Was the note obtained by duress? In the first place it must be borne in mind that the burden of showing that the note was void by reason of the fact that it was the result of duress was upon the plaintiff; and upon a painstaking investigation of the evidence it is our opinion that the plaintiff failed to carry this burden, and in fact the preponderance of the evidence upon this point seems to lie in favor of the defendant. It is true that at one stage of the mêlée Byfield asked one of the ship's crew if he had a pistol, but he made no threat against Candler, though Candler was present. He also said to another witness to whom he was complaining of the occurrence (which he said he had never thought would transpire when he came on board the ship); that he would make him (meaning Candler) pay for it. But there are no circumstances in all the testimony considered either singly or collectively which in our opinion approached the requirement embodied in the definition of the term "duress" as applied in the law. The testimony shows that the plaintiff was cool and collected. Apparently he was superior both in courage and strength to the defendant. He was

at the time separated from his wife, and accompanying him on the tour to Europe, along with Mr. and Mrs. Byfield, were his two daughters, girls of nine and eleven years of age. They were in an apartment only a few steps from the scene of the disturbance, closer even than the officers were when they heard the first scream of Mrs. Byfield. According to the testimony, Byfield had been vanquished in the conflict with Candler, and, sitting down crying, would nevertheless continue to shriek loud enough to be heard by all within hearing distance his charges that Candler had debauched his wife, and all of Candler's efforts to quiet him were of no avail. There is absolutely no evidence that Candler felt any fear of Byfield in a physical sense. There is no evidence that Byfield made any attempt to injure him other than with his fists; and having failed in that endeavor, his pugnacity seems to have completely evaporated. Mere threats will not constitute duress. The facts which are essential to constitute duress must be such as are sufficient to subvert the will of the party alleged to be under duress, and to substitute for his will the will of another. With the burden placed by law of showing that the check was the result of duress, and especially when that proof rested entirely upon circumstances, it became incumbent upon the plaintiff to show that he did not give the check as a means of preventing publicity which would be injurious to his reputation as a business man and as a citizen, or that the check was not given to keep from his little girls the knowledge of the transaction, or perhaps for the purpose of pursuing to a successful conclusion the conquest of the woman in the case. The testimony suggests any number of reasons why the giving of the check might have been a better solution of the dilemma than public litigation; but we fail to see any such evidence of force or fraud, if the evidence upon the point of consideration be sufficient, as we have already held, as required the jury to find that Mr. Candler was compelled to do what he was not at the time perfectly willing to do. As the jury was correctly instructed by the trial judge, "Duress consists in any illegal or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to, or tending to coerce the will of another and actually inducing him to do an act contrary to his free will." Of course, in the present case there was no imprisonment either legal or illegal;

threats of bodily harm are absent, unless the inquiry to the seaman as to whether he had a pistol can be so construed; and we think the jury were authorized to find, in view of what we have just stated, that there were no other circumstances in this case upon which the law could base the hypothesis that the plaintiff was coerced to pursue a different course from that which his own judgment at that time dictated as the best for his own interests. So we are of the opinion that the general grounds of the motion for a new trial were properly overruled by the trial judge.

2. The first and second grounds of the amendment to the motion for a new trial assign error upon the exclusion of certain testimony upon the objection that it was irrelevant and immaterial. The court refused to allow the witness Edgar Dunlap to testify that he saw the defendant Byfield playing cards frequently about a week later, on the ship Aquitania with Bernstein and Lyons, on the return trip from Europe to America. The court also refused to allow Thomas C. Erwin to testify to the same facts as those offered to be shown by Dunlap. Even if it be conceded that an important issue in the case was, as contended by the counsel for the plaintiff, whether Bernstein and Lyons were friends of Candler or better friends of Byfield at the time that the check for $25,-000 was exchanged in Paris for a cash payment of $2000 and the surrender by Candler to Byfield of $2500 of his notes for borrowed money, and the giving of the note for $20,500, certainly the fact that several days later these parties were seen gambling with the defendant would illustrate nothing as to what was in the mind of Candler at the time he made the exchange. Byfield had given a letter exonerating Candler from charges which he had previously made. The letter was as follows: "In regard to our misunderstanding, I wish to say to you that I want to withdraw the statement I made against you with regard to my accusing you of being intimate with my wife, Sarah Byfield, on board the steamer Berengaria. These statements were made in a moment of anger, and I am writing this letter to you in order that I do you justice, as all statements I made at the time and in the presence of others were not so. I am writing this letter to you of my own free will and accord, and without any intimidation."

In explanation of this letter Byfield testified as to the reasons which induced him to sign this writing, which at the time of the

trial he repudiated. In my personal opinion the testimony of By-field in explanation of the reasons which induced him to write and deliver the letter were wholly irrelevant and should have been excluded upon proper objection. However, no objection was made. The fact that the plaintiff had permitted illegal testimony to be admitted without objection would not have authorized the court to admit similar irrelevant and immaterial testimony in rebuttal of the former irrelevant matter, when proper objection was made. Two wrongs never make one right. If the evidence which the court repelled has any probative value, it would seem at least to be inconclusive to draw from the fact that gamblers play cards upon ships the inference that the players are necessarily friends. While the evidence was admissible as a circumstance of perhaps some probative value, it would not have been sufficient in and of itself to have authorized an inference that friendship existed between the parties gambling together, in such a degree as to authorize the conclusion that there had in fact been a conspiracy between Byfield and the gamblers, as insisted by the plaintiff, who sought by this proof to impeach the testimony of Byfield which tended to suggest that he signed and delivered the letter through fear. As said by Mr. Wigmore (4 Wig. Ev. 20 ed., 73, § 1904) : "Circumstantial evidence, concededly relevant, may nevertheless be excluded by reason of the general principle that the probative use-fulness of the evidence is more than counterbalanced by its dis-advantageous effects in confusing the issues before the jury, or in creating an undue prejudice in excess of its legitimate probative weight. In either case, its net effect is to divert the jury from a clear study of the exact purport and effect of the evidence, and thus to obscure and suppress the truth rather than to reveal it." In this view of the matter, though the evidence excluded had relevancy as affecting the credibility of the witness Byfield, we do not think that the error in its exclusion was sufficiently harmful to the plaintiff as to require the grant of a new trial. The evidence was relevant and admissible, but we are not prepared to hold that its exclusion was sufficiently harmful to require the grant of a new trial.

3. The third special ground of the motion complains because the court refused a request to charge the following: "The plaintiff alleges that this note is void for two reasons. First, the plain-

tiff alleges that the note was executed under duress, and that it is for that reason void, irrespective of whether there was any consideration for it. In the second place, the plaintiff alleges that there was no consideration for the note, and that the same is still in the executory stage—not having been paid, and that therefore the defendant [plaintiff] is not liable on it." An examination of the charge.of the court as given discloses that this request, so far as the same is pertinent, was more fully and better presented by the court. In the first part of the charge the court used the following language: "The plaintiff charges that this promissory note was illegal and void and should not be enforced as against him, for the reason that it was obtained from him through duress, and for another reason, namely, that it was given without a legal or valid consideration, for the reasons set forth in his petition in detail." Later on in the charge the court instructed the jury more specifically as follows: "Now, the plaintiff prays in his petition for a judgment of the court canceling the note for $20,500, for. two reasons: He says that the note should be canceled because the note was obtained from him by duress, and for that reason it is not a legal obligation against him and he does not owe it; and the plaintiff prays, also, that he have judgment against the defendant for the sum of $2000 paid in money at the time the note was given, and for the additional sum of $2500 which he says the defendant owed him for moneys loaned by him to the defendant. The plaintiff says, also, that this note should be canceled for the further reason that it was without consideration; that the check, in the first place, was without any consideration at all, for the reason that he had not done the defendant any wrong, or the defendant's wife any wrong, and that he did not owe the defendant anything, and that the claim on the part of the defendant against him was not in good faith, and there was no legal consideration for the check; and he says, likewise, that the note for $20,500 is without consideration also, for the reason that the check was void as being without consideration, that it was not given in settlement of a bona fide claim on the part of the defendant against him, and that at the time the note was given there was no additional consideration—no valuable consideration for the note, and that the note should be canceled for the reason, also, that it is without consideration."

4. In the fourth ground error is assigned upon the refusal of the court to charge as follows: "The jury are instructed that if, under the instructions given, you believe that the plaintiff, Walter T. Candler, executed this note under duress, then I charge you that this note is void and can not be collected, and your judgment should be in favor of the plaintiff; and this is true whether there was any actual consideration for the note or not: In other words, if you believe from the evidence that there was a liability of Candler to Byfield growing out of the transaction on the high seas upon the steamship Berengaria, as alleged in the pleadings of the defendant Byfield, still if you believe that Candler gave the note in dispute under duress as I have defined it to you, then your verdict should be in favor of Mr. Candler, and there would be no liability upon this note." This instruction was also completely covered by the charge of the court upon that subject, the court charging the jury: "Now, gentlemen, to return to the contention on the part of the plaintiff as to duress, with regard to that contention on the part of the plaintiff, the court instructs you that if you believe that the plaintiff, Walter T. Candler, executed to the defendant, Clyde K. Byfield, a check for the payment of money, but if you should believe that the execution and delivery of the check was not the act of his free and voluntary will, but that it was induced as a result of fear of bodily harm to him, or the result of other means amounting to or tending to coerce his will and actually inducing him to do the act contrary to his free will, then and in such event, gentlemen, the check itself would be void and would not constitute a legal obligation on the part of the plaintiff, Walter T. Candler, to pay the defendant, Clyde K. Byfield, the amount of such check. If you believe, gentlemen, that the plaintiff, Walter T. Candler, did sign and deliver to the defendant, Clyde K. Byfield, a promissory note of the character referred to in the plaintiff's petition, and if you should further believe that the signing and delivery of such note was not the free voluntary act of the plaintiff, but that it was induced at the time as the result of threats of bodily harm to the plaintiff by and on the part of the defendant, or the result of other means amounting to or tending to coerce the will of the plaintiff, and actually inducing him to do the act contrary to his free will, then and in such event, gentlemen, the signing and delivery of the note

by the plaintiff to the defendant would not constitute a legal or valid obligation on the part of the plaintiff to pay the defendant the amount specified in said note, and it would be your duty to find in favor of the plaintiff and against the defendant on the plea of duress, and that such note should be surrendered and canceled, and also to find, in that event, that the plaintiff should have and recover of the defendant the amount of money that may have been paid as a part of the execution of the note, and the amount due on any indebtedness or legal obligation that the plaintiff may have held against the defendant at the time, which may have been surrendered also to the defendant at the time and as a part of the transaction resulting in the execution of the note referred to, for $20,500, provided you believe that it was the result of duress, as hereinbefore stated to you."

The complaint as to the refusal of the requests to charge is that the trial judge did not in so many words tell the jury that, although there might have been a good and valid consideration for the note, the defendant could not recover upon it if it was obtained by duress. It will be observed from the two excerpts from the charge which we have quoted, as it also appears in other portions of the instructions of the court as a whole, that while the judge did not say that even though the jury did believe Byfield had a claim which might have been legally compromised he could not recover if there was duress, the instructions actually delivered by the court upon the subject of duress absolutely and under all circumstances exclude the right of any recovery upon the part of the defendant if the jury believed either the check or the note was the result of duress. The judge first told the jury that want of consideration would prevent a recovery upon the part of the defendant. He next took up as a distinct subject-matter the question of duress, and the manner and form of his instructions as to the effect of duress upon the validity of both the check and the note was such that the jury could neither have been confused nor misled into any other view than that duress, regardless of any other element of the case, if found by the jury to exist, would destroy the defendant's entire case. We might quote other portions of the instructions of the trial judge upon this point, but it is altogether unnecessary. The charge of the court was a concise, clear, and impartial presentation of the contentions of both parties,

with an application of the law pertinent thereto so lucid that there is no probability that the jury could have been either confused or misled.

*Judgment affirmed. Cross-bill of exceptions dismissed. All the Justices concur, except Atkinson and Hill, JJ., disqualified, and*

BECK, P. J., dissenting. I dissent from the conclusion reached by the majority that the judgment should be affirmed, on the grounds:

(1) That the evidence referred to in the second division of the opinion rendered by the majority was material; and if it was material, then, being relevant, as the majority of the court concede, it should have gone to the jury for consideration by them in making their verdict. Evidence may be relevant and yet so completely immaterial as to render its exclusion harmless to the party offering the evidence; but where it is both relevant and material, its exclusion, as a general rule, is a good ground for the grant of a new trial. And in this case the general rule should be applied, for the evidence tended to throw light upon a material issue in the case.

(2) The court was duly requested in writing to give the following instructions to the jury: "The jury are instructed that if, under the instructions given, you believe that the plaintiff, Walter T. Candler, executed this note under duress, then I charge you that this note is void and can not be collected, and your judgment should be in favor of the plaintiff; and this is true whether there was any actual consideration for the note or not. In other words, if you believe from the evidence that there was a liability of Candler to Byfield growing out of the transaction on the high seas upon the steamship Berengaria, as alleged in the pleadings of the defendant Byfield, still if you believe that Candler gave the note in dispute under duress as I have defined it to you, then your verdict should be in favor of Mr. Candler, and there would be no liability upon this note." This request to charge was pertinent and legal, and exactly and precisely adapted to one of the contentions of the plaintiff. It was authorized by the evidence, and the court erred in refusing to give it; for the charge upon the same subject failed to deal with this contention of the plaintiff as clearly and appositely as it was dealt with in the written request to charge.