## 33343. SHAW v. THE STATE.

HALL, Justice.

Disputes between various members of the Shaw family and Danny Ray ended in Ray's death at the hands of John Shaw, appellant. Ray was shot in the back with a deer rifle while he was sitting in his pickup truck on the allegedly private road on the Shaws' farm.

The state contended that Ray was deliberately murdered because of the prior disputes, which involved terroristic threats against and assaults on members of the Shaw family, and repeated trespasses on their property. Having caught Ray trespassing again on Shaw property, John Shaw shot him without justification.

Appellant attempted to show justification based on defense of Grady Shaw (his brother) from a deadly assault. The three Shaw men (John, Grady, and their father Leon) were returning from working in the fields in the early evening, after harvesting corn. They were armed to hunt deer because one had been seen in the fields. While driving up their private road, John Shaw (in front on the combine) saw a pickup truck approaching and pulled off the road to allow it to pass. He got down to see who was in the truck, and was nearly run down by Danny

Ray, the driver. The pickup drove down the road and stopped next to Grady Shaw's truck. John Shaw ran back to his father's truck and got a rifle. Appellant testified that he saw a gun in Ray's hand, and immediately shot Ray to protect his brother. Grady Shaw also shot at the truck as it left the scene, but did not hit the driver. The truck crashed a short distance from the farm, and Ray was found dead by the ambulance attendants called by appellant. No gun was found in Ray's truck.

Appellant was convicted of murder.

1. Appellant complains that an accusation against Danny Ray for obstructing a police officer, and his guilty plea and probated sentence for that offense were excluded from evidence on objection by the state that they were irrelevant. This conviction arose out of an incident in which two deputy sheriffs were called to the Shaw farm to protect the Shaws from Ray's terroristic threats to kill members of the Shaw family. Ray attempted to escape from the deputies, and in doing so assaulted one of them.

This evidence was offered to show Ray's state of mind, i.e., his hostility to the Shaws, whom he blamed for the conviction. The defense contended that Ray's state of mind was relevant to the issues of justification and provocation. The evidence was also offered to show Ray's violent character. Used for the latter purpose the evidence was clearly not admissible. *Black v. State,* 230 Ga. 614, 615 (198 SE2d 314) (1977).

However, evidence of Ray's conviction should have been admitted to show his state of mind towards the Shaws. See *Monroe v. State,* 5 Ga. 85, 138 (1848). The fact that Ray's actions on the Shaw farm resulted not only in his arrest, but also in his conviction, was relevant to show the depth of his hostility towards the Shaws. The Shaws were aware of this hostility, and were entitled to prove it to support the defenses of justification and provocation.

Nevertheless, we find the error harmless. There was ample evidence in the case of Ray's hostility towards the Shaws. Members of the Shaw family testified as to Ray's terroristic threats against them, and as to assaults on them. The incident resulting in the conviction was related in detail. A warrant for the arrest of Ray made out by Grady Shaw was also in evidence. In light of this evidence

concerning Ray's hostility towards the Shaws, the evidence of his conviction was not important to the defense. We find that it is highly probable that the exclusion of this evidence did not contribute to appellant's conviction. *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869) (1976).

2. The testimony of Malcolm Giles concerning a threat against Ray by appellant was admitted over the objection it was "irrelevant hearsay." The more specific objection made on appeal was not made at the time the objectionable question was asked, so far as the transcript shows. We cannot know what transpired during the unrecorded bench conference, and under the circumstances shown in the record we conclude that the objection was not specific enough to preserve the point for review by this court. Cf. *Columbian Peanut Co. v. Pope,* 69 Ga. App. 26, 29-30 (24 SE2d 710) (1943). Compare *Crowder v. State,* 237 Ga. 141 (227 SE2d 230) (1976). Had the objection been made with adequate specificity, at least part of the testimony could have been given in admissible form by deleting the quotation of the threat allegedly made against the deceased, since the evidence was relevant to Ray's state of mind.

3. It was improper for the special prosecutor to imply during cross examination, in the presence of the jury, that the men in the Shaw family reacted strongly to individuals using their road, and intimidated such trespassers[1] into avoiding the use of that road. The special prosecutor was attempting to use the actions of Leon and Grady Shaw to prove John Shaw's motive for murder.

However, the special prosecutor dropped this line of questioning after objection, and Grady Shaw denied the allegations. The improper questions asked in the presence of the jury were not so inflammatory as to result in reversible error.

4. An objection to a later question asked of Grady Shaw was cured when the special prosecutor withdrew the question. If counsel felt that further action was required,

---

[1] We express no opinion as to whether the road was private or public.

he should have requested a curative instruction or a rebuke to counsel. Contrary to appellant's assertion, the question objected to was not repeated.

5. The exclusion from evidence of testimony about a self-serving declaration of John Shaw shortly before he was arrested was not error, even though testimony about a statement made minutes earlier was elicited by the state. The trial court determined that the two statements were unrelated to each other, despite their proximity in time. This determination is supported by the difference in subject matter of the statements. The latter statement did not tend to qualify or explain the earlier statement. *Brown v. State,* 119 Ga. 572, 575 (46 SE 833) (1903); *Dickey v. State,* 240 Ga. 634, 641-642 (242 SE2d 55) (1978).

6. Any error in limiting appellant's cross examination of a witness concerning statements made by appellant to the police after arrest was cured when appellant was later given a full opportunity to cross examine the witness about the same statements.

7. Certain testimony of a police officer allegedly gave the jury the impression that the Shaw family refused to cooperate in the investigation of the murder, and was objected to. This supposedly gave the impression that John Shaw was uncooperative, and negated the defense strategy of emphasizing appellant's cooperation with the police. This evidence was admissible under Code § 38-302 to explain the officer's conduct during the investigation. See *McLaughlin v. State,* 236 Ga. 577 (224 SE2d 412) (1976). While the trial judge had discretion to exclude the evidence if he felt that its prejudicial impact substantially outweighed its probative value, we cannot say he abused his discretion. Compare *Candler v. Byfield,* 160 Ga. 732 (129 SE 57) (1925), with *Edwards v. State,* 213 Ga. 552, 555 (100 SE2d 172) (1957), and *Avery v. State,* 209 Ga. 116 (70 SE2d 716) (1952).

8. Any error in a portion of the closing argument by the special prosecutor, in which he referred to the actions of the grand jury, was cured by a prompt curative instruction by the judge.

9. Appellant contends that the cumulative effect of improper prosecution tactics was to deny him a fair trial

by placing the character of the entire Shaw family in issue. Some of the prejudicial incidents were objected to, and the impropriety cured. In other instances appellant failed to object, or to move for a curative instruction or a rebuke to counsel. No motion for a mistrial was made.

However, if the cumulative effect of improper prosecution tactics was to deny appellant a fair trial, the conviction cannot stand. Code § 2-101. The actions which were arguably improper were limited in number and in their potential for prejudicial impact. We have already noted the impropriety of attempting to show appellant's guilt by the actions of his relatives, but the defense was successful in preventing this. We conclude that John Shaw was given a fair trial.

10. There was no error in refusing to give the requested charge on aggravated assault, nor in giving a charge on that crime in the court's own words. A charge on aggravated assault was authorized by virtue of the fact that this crime would support a finding of felony murder.

However, appellant wanted the charge to support his claim of justification or provocation. He contended that the deceased committed an aggravated assault on him by attempting to run him down with a truck. The charge given, he argues, was less favorable to him than the requested charge, since the court failed to state that an assault with intent to kill is an aggravated assault regardless of whether a deadly weapon was used. He contends this charge led the jury to believe that Ray did not commit an aggravated assault since a truck is not a "per se deadly weapon."

This position is untenable since the truck would constitute a deadly weapon if used in the manner alleged. Moreover, the fact that the law would label Ray's action as an aggravated assault is not relevant to whether the assault was sufficient provocation to reduce the crime to manslaughter.

While in another case the fact that an assault was aggravated, and thus a felony, might be relevant to the justification of using deadly force to arrest a fleeing felon, this defense was not available to appellant, as explained below.

11. The trial court correctly refused to charge on

citizen's arrests, since the requested charges were not adjusted to the evidence. There was no evidence of an intent to effectuate an arrest.

12. The refusal to charge on disparity in size between appellant's brother and the victim was not error. Any disparity in size was irrelevant. Appellant knew his brother was armed. See *Alexander v. State,* 118 Ga. 26, 28 (44 SE 851) (1903). Moreover, appellant testified that he believed that Ray was armed with a pistol, and about to shoot his brother. It was this threat, he said, which prompted him to shoot immediately, without warning Ray. Thus, appellant did not anticipate a hand-to-hand fight between his brother and the victim. Finally, appellant would not have been justified in shooting Ray without warning even if he did anticipate a hand-to-hand fight, for both he and his father were present and could have intervened without firearms.

13. Appellant requested a charge under Code § 68-902.1 (b) (3), which provides that where a chemical analysis shows that a person had .10 percent or more by weight of alcohol in his blood he is presumed to be "under the influence." Even ignoring the fact that this section by its terms deals with a traffic offense, appellant failed to show that this presumption was relevant. Appellant sought to prove Ray's intoxication to show that John Shaw had a reasonable belief that Ray was about to murder Grady Shaw. An intoxicated individual may be more likely to commit a violent act, but John Shaw had no way of knowing that Ray was intoxicated. Thus the fact of Ray's intoxication could not have given rise to a greater than normal fear of Ray's actions.

It could also be argued that Ray's intoxication was relevant since the fact of intoxication would lead to the inference that Ray was more likely to act in a violent manner, and this inference would tend to show that Ray in fact tried to kill John Shaw by running him down. This assault, if it occurred, was relevant to both provocation and justification. This chain of inferences made the evidence of Ray's intoxication relevant, and such evidence was admitted without objection. But a charge on the presumption of being "under the influence" was not called for, since there was no need for a presumption when

an expert employed by the state testified without objection that Ray was heavily intoxicated, and went on to describe the degree of intoxication. Finally, being "under the influence" is not necessarily the same as being so intoxicated as to become violent.

14. Appellant complains that the verdict is contrary to the evidence, which overwhelmingly favored him. The jury was free to disbelieve the testimony which tended to show justification or provocation. The evidence that appellant shot an unarmed man in the back with a rifle after a long series of disputes with him was highly probative evidence to support the verdict of guilty. The trial court did not err in denying the motion for a new trial.

15. Appellant discovered after trial that a witness had seen a full whiskey bottle in the deceased's truck at the scene of the crime. Since that bottle was not inventoried by the police, appellant argues it was stolen from the scene, and that this shows that Ray's gun could have been stolen from the scene. But the evidence shows that the full bottle was removed from the truck by the police, though not inventoried, and thus no inference can be drawn that anything was stolen from the truck. This newly-discovered evidence was certainly not so material that it would probably produce a different verdict, and thus a new trial was properly denied. *Bell v. State,* 227 Ga. 800 (183 SE2d 357) (1971).

16. Appellant contended in his motion for a new trial that one of the bailiffs discussed the case with the three male jurors during the trial. The evidence submitted in the evidentiary hearing on the new trial motion clearly showed that this was not the case, and the trial court correctly denied a new trial.

17. Appellant's last enumeration of error is deemed abandoned. Rule 18 (c) (2).

*Judgment affirmed. All the Justices concur, except Hill and Bowles, JJ., who dissent from Division 2 and the judgment.*

Argued March 14, 1978 — Decided April 18, 1978 —
Rehearing denied May 16, 1978.

*O'Neal, Stone & Brown, H. T. O'Neal, Jr., Manley F. Brown,* for appellant.

*W. Donald Thompson,* District Attorney, *Willis B. Sparks,* Assistant District Attorney, *George D. Lawrence,* for appellee.