**John Lee SHAW, Petitioner,**

v.

**Allen STONE, Warden, Houston Correctional Institution, and Arthur K. Bolton, Attorney General of the State of Georgia, Respondents.**

Civ. A. No. 79–56–MAC.

United States District Court,
M. D. Georgia,
Macon Division.

Jan. 27, 1981.

F. Robert Raley, Macon, Ga., for petitioner.

Arthur K. Bolton, Atty. Gen., Daryl Robinson, Asst. Atty. Gen., State of Ga., Atlanta, Ga., for respondents.

OWENS, Chief Judge:

Petitioner in the above styled action seeks federal habeas corpus relief under 28 U.S.C.A. § 2254. Petitioner is presently serving a life term of imprisonment imposed by the Superior Court of Crawford County, Georgia on March 4, 1977 following his conviction by jury in that court of murder. Pursuant to 28 U.S.C.A. § 636(b)(1)(B), the petition was referred to United States Magistrate John D. Carey, who on October 29, 1980 filed proposed findings of fact and recommendations for disposition by the court. This habeas corpus petition is now ready for determination by the court.

The Magistrate found that the trial court's admission over objection of the double hearsay testimony of witness Malcolm Giles rendered the trial fundamentally unfair and thus denied petitioner the due process guaranteed by the Fifth and Fourteenth Amendments. For this reason the Magistrate recommends that this petition for habeas corpus relief be granted.

■ It is fundamental that federal courts possess only limited authority to consider state evidentiary rulings in a habeas corpus proceeding by a state prisoner. *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *Nordskog v. Wainwright*, 546 F.2d 69, 72 (5th Cir. 1977). The "mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief, but only where the violation of the state's evidentiary rules results in a denial of fundamental fairness should habeas be granted," *Cronnon v. State of Alabama*, 587 F.2d 246, 250 (5th Cir. 1979); *Pentecost v. Estelle*, 582 F.2d 1029, 1031 (5th Cir. 1978); *Anderson v. Maggio*, 555 F.2d 447, 451 (5th Cir. 1977), a stringent requirement that the error be "material in the sense of a crucial, critical, highly significant factor." *LaRoche v. Wainwright*, 599 F.2d 722, 726 (5th Cir. 1979); *Cronnon v. State of Alabama, supra*, 587 F.2d at 250; *Hills v. Henderson*, 529 F.2d 397 (5th Cir. 1976), *cert. den.* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124.

■ The relevant portion of the Malcolm Giles testimony is set out in the Magistrate's report. On appeal the Georgia Supreme Court held that the hearsay objection to the Giles testimony was not specific enough to preserve the point for review. However, the Georgia Supreme Court apparently recognized that the testimony contained double hearsay and stated that at least part of the testimony was admissible to show the victim's state of mind. *See, Shaw v. State*, 241 Ga. 308, 310, 245 S.E.2d 262 (1978). Pretermitting the questions of whether the objection was specific enough and whether the testimony was inadmissible double hearsay, this court has carefully considered the objectionable testimony in the context of the entire trial and finds that its admission by the trial court, even if erroneous, was not so prejudicial as to have denied petitioner fundamental fairness. There was considerable evidence presented at trial regarding the ill feelings between the Shaws and the victim, including testimony as to several specific confrontations during which threats and even blows were exchanged. *See*, Testimony of Bobby Joe Causey, Tr. 728; Testimony of Allen O'Neal, Tr. 758; Testimony of Robert Ray, Tr. 771, 776. Moreover, the cross examination of Malcolm Giles by petitioner's attorney cast serious doubt on the credibility of Giles' testimony, which the jury could not help but recognize. Mr. Giles testified on cross examination that he didn't know when, where, or under what circumstances his conversation with the victim took place, and could only estimate that the conversation had occurred some eights months before the victim's death. With the considerable additional evidence of the animosity between petitioner and the victim, and with the accuracy of Malcolm Giles testimony seriously questioned, the admission of the one statement constituting a threat by petitioner against the victim clearly was not so critical or prejudicial as to have denied petitioner a fair trial. For these reasons, the court declines to adopt the recommendation of the Magistrate, and holds that admission of the Giles testimony by the state trial court did not constitute constitutional error cognizable in habeas corpus.[1]

Since the Magistrate found petitioner to be entitled to relief on the grounds the trial court admitted inadmissible double hearsay testimony, he did not enter findings and recommendations as to petitioner's other asserted grounds for relief. This court having carefully considered these other asserted grounds and being of the opinion that they do not raise errors of constitutional proportions, it is unnecessary to remand this petition to the Magistrate for his recommendations. This court will rule on petitioner's claims *seriatim*.

■ (1) Petitioner claims that he was denied due process and equal protection due to the fact that the Chief Justice of the Georgia Supreme Court participated in decision of the case even though he had retired from the courtroom after the call of petitioner's case and thus did not hear any

---

1. The court agrees with the finding of the Magistrate that petitioner has exhausted all available state remedies as to each of his asserted grounds for relief.

of the oral argument. Petitioner argues that, had the Chief Justice heard the oral argument, he might have voted with the two Justices who dissented from the majority opinion on the question of the admissibility of the Malcolm Giles testimony, and may have persuaded others to dissent on the same grounds. Petitioner's argument is without merit. Rules governing oral argument before the Supreme Court of Georgia are within that court's discretion. Whether the rules adopted by that court for oral argument are proper, and whether that court abides by those rules in every case are not constitutional matters subject to review by this court. Moreover, petitioner's assertion that oral argument may have changed the opinion of the Chief Justice is mere speculation. The Chief Justice had a transcript of the trial, briefs of both sides, supplemental briefs, and briefs on a motion for rehearing, all of which addressed the question of Malcolm Giles' testimony. The two dissenting justices had ample opportunity to present their view to the Chief Justice. It must be presumed that the Chief Justice fairly considered petitioner's arguments regarding the Giles testimony and found them unpersuasive. The absence of the Chief Justice from oral argument clearly does not create an error of constitutional due process proportions.

■ (2) Petitioner complains that it was a denial of due process for the trial court to refuse to admit the victim's guilty plea to obstructing a police officer in order to show the victim's state of mind toward petitioner. As already pointed out, this court cannot review state evidentiary questions unless they constitute errors which are so prejudicial that they denied petitioner a fair trial. *Cronnan v. State of Alabama, supra.* While this evidence probably should have been admitted to show the victim's state of mind, its exclusion by the trial court was only minimally prejudicial, if at all, as there was ample evidence of the hostility between the victim and petitioner.

■ (3) Petitioner claims that he was denied his right to a fair trial due to the failure of the prosecutor to disclose that a witness had seen a GBI agent pick up a full whiskey bottle from the cab of the truck. Petitioner argues that since this bottle was not on the police inventory of the contents of the truck, it must have been stolen from the scene, and thus the victim's alleged gun could also have been stolen from the scene. The Dunbar affidavit shows that the full whiskey bottle was removed by the GBI agent; the bottle simply was not inventoried by the police. The police would not have failed to inventory a gun found on the scene. The facts related by the Dunbar affidavit do not support petitioner's speculative inference that the victim's alleged gun, like the full whiskey bottle, could have been stolen or otherwise disappeared from the scene. *See, Shaw v. State, supra,* 241 Ga. at 314, 245 S.E.2d 262.

In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court held that a prosecutor has a constitutional duty to volunteer material exculpatory evidence to the defendant. Evidence is material for purposes of disclosure by the prosecutor "if it creates a reasonable doubt that did not otherwise exist." *Id.,* 427 U.S. at 112, 96 S.Ct. at 2401, 49 L.Ed.2d at 355. The mere possibility that undisclosed information may have affected the outcome of the trial does not establish materiality in the constitutional sense. *Id.,* 427 U.S. at 109, 96 S.Ct. at 2400, 49 L.Ed.2d at 353. It is the court's opinion that this evidence that a GBI agent had taken a full whiskey bottle from the truck which had failed to appear on the police inventory clearly was not so exculpatory as to create a reasonable doubt in a juror's mind as to petitioner's guilt, a reasonable doubt that otherwise did not exist here. It is reasonable to assume that the prosecutor did not make the same inference from the absence of the bottle on the police inventory as that which petitioner raises here. Since this information was not materially exculpatory, the prosecutor had no duty to voluntarily disclose it to the defense.

■ (4) Petitioner next contends that he was denied a fair trial due to improper questions and tactics on the part of the

special prosecutor. Misconduct by the prosecution does not present a claim of constitutional magnitude which is cognizable in a proceeding under 28 U.S.C.A. § 2254 unless the prosecutor's acts, taken as a whole and in the context of the entire trial, were so prejudicial as to render the trial fundamentally unfair in violation of the due process clause. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Easter v. Estelle*, 609 F.2d 756 (5th Cir. 1980); *Houston v. Estelle*, 569 F.2d 372 (5th Cir. 1978); *Stone v. Estelle*, 556 F.2d 1242 (5th Cir. 1976). This must be distinguished from conduct of the prosecutor which is improper or unwarranted but is not a denial of due process. *See, Easter v. Estelle, supra*, 609 F.2d at 760.

■ Petitioner objects to a portion of the special prosecutor's closing argument in which he referred to the actions of the grand jury. Any error in these remarks was adequately cured by a prompt instruction by the trial judge that the jury should not draw any inference from the grand jury indictment. Petitioner objects to the prosecutor's introduction of the Malcolm Giles testimony. The introduction of that testimony was not an improper tactic by the prosecutor, as it was at least arguably admissible hearsay and the trial court did in fact admit it. ·

■ Petitioner also objects to a number of improper questions asked by the special prosecutor. In each instance these questions were either withdrawn by the prosecutor upon the objection of petitioner's trial attorney, or were adequately addressed by the trial judge. Although petitioner argues that in several of these instances the trial judge should have given cautionary instructions to the jury and should have rebuked the special prosecutor, petitioner's trial attorney failed to request the court to do either. The absence of requests for cautionary instructions is a factor to be taken into consideration in determining whether the prosecutor's remarks were so prejudicial as to deny petitioner a fair trial. *Malley v. Manson*, 547 F.2d 25 (5th Cir. 1976). The court notes that the trial judge did caution the prosecutor a number of times during the course of the trial.

■ Petitioner complains that during questioning of petitioner's sister at trial the prosecutor in his questions attributed to Grady Shaw, petitioner's brother, two statements which indicated that the Shaws intended to kill the victim. (Tr. 34–35). The trial judge sustained petitioner's attorneys' objections to both questions, and petitioner's sister categorically denied that she had ever heard Grady Shaw make any such statements. Therefore, the prosecutor's questions, while improper, did not unduly prejudice petitioner. Petitioner further complains that at one point while cross-examining petitioner the prosecutor "yelled" and questioned petitioner in an argumentative fashion. The prosecutor, after objection, rephrased his question and the trial judge then ruled that it was proper. Petitioner does not allege that the prosecutor continued to yell during his examination of petitioner. A review of the transcript shows that this was a lengthy, hard fought, emotional trial. In such a case, this one brief instance of argumentative questioning in a loud tone of voice cannot be said to have unduly prejudiced petitioner.

■ Petitioner contends that during cross examination of Grady Shaw the prosecutor asked improper questions, arguing by innuendo that the Shaws were in a general conspiracy to drive people from their land. This court agrees that it was improper for the prosecutor to attempt to use actions of the other members of the Shaw family to show petitioner's guilt. However, as the Georgia Supreme Court points out, *Shaw v. State, supra*, 241 Ga. at 310, 245 S.E.2d 262, the prosecutor dropped this line of questioning after a conference between the judge and the attorneys, and Grady Shaw denied the allegations. Therefore, this line of questioning, which lasted only briefly, cannot be said to have been so inflammatory or prejudicial as to have denied petitioner a fundamentally fair trial.

■ Finally, petitioner contends that the special prosecutor attacked the witness

Grady Shaw during cross examination by using a purported statement given by Grady Shaw to a GBI agent. Petitioner argues that if it was in fact a statement, the special prosecutor should have first "shown it to the witness as required by Ga.Code Ann. § 38–1803 and, if it was not a statement, it should not have been referred to as such. Ga.Code Ann. § 38–1803 requires that a witness be shown a statement before it may be introduced to impeach his testimony. An examination of the transcript shows that in the beginning the special prosecutor merely used the purported statement as an aid to his examination of Grady Shaw. When he attempted to use the statement to impeach Shaw's testimony, Shaw denied making the statement, petitioner's attorneys objected and, although the objection was overruled by the trial judge, the special prosecutor abandoned the question." Tr. 600–602. When the special prosecutor again attempted to use the statement several minutes later, petitioner's attorneys objected and the court ordered the special prosecutor to allow petitioner's attorneys to examine the statement. They did so and objected to its admissibility on the grounds that it was merely a synopsis by the GBI agent of what Grady Shaw had allegedly told him, which was not signed by Grady Shaw, i. e. it was not in fact a statement. The trial judge ruled the purported statement inadmissible as such. Tr. 609–617. Thereafter petitioner's attorneys agreed to the special prosecutor's using the GBI agent's report to ask Grady Shaw whether or not he told the GBI agent something. Tr. 621. While the special prosecutor made much use of the purported statement, the trial judge and petitioner's attorneys prevented him from using it improperly. Moreover, the special prosecutor's repeated reference to the report as a "statement" was not prejudicial, as it was subsequently made clear to the jury that it was not a statement. Tr. 619–620.

The court agrees that some of the special prosecutor's questions and tactics were not completely proper, and if this were a Georgia appellate court it might be that the prosecutor's actions could be considered suf-

ficiently improper for the court in its supervisory powers to require a new trial. However, this court has no supervisory powers over the state courts of Georgia. *See, Donnelly v. DeChristoforo, supra.* For this federal district court to give petitioner habeas relief, it must find not only that the prosecutor's conduct was improper, but that it was so prejudicial that it denied petitioner a fundamentally fair trial. This was a lengthy, hard fought trial. While there may have been several instances when the special prosecutor's actions were improper or unwarranted, the court or petitioner's attorneys reacted in these instances and prevented the prosecutor's actions from seriously prejudicing petitioner. It is the court's opinion that the special prosecutor's conduct in this case clearly was not so prejudicial as to deny petitioner a fair trial.

■ (5) Petitioner next attacks the sufficiency of the evidence to support a verdict of guilty. The prosecution's evidence that petitioner shot the unarmed victim in the back after a long series of heated disputes between them was highly probative of petitioner's guilt. The jury was free to disbelieve the testimony tending to show provocation or justification. A review of the record in this case shows that there was sufficient evidence in this case to justify a rational trier of fact to find petitioner guilty of murder beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *reh. den.* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126.

(6) Finally, petitioner contends that he was denied his Sixth and Fourteenth Amendment rights to be tried by an impartial jury due to a conversation between a bailiff and several jurors regarding the evidence at trial and the possible verdicts. Thomas Howard was the bailiff in charge of watching over the jury to see that they had no outside contacts. In support of a motion for a new trial (and as a basis for habeas corpus relief here), petitioner's attorneys submitted an affidavit signed by Howard which stated that on several occasions during the trial he and three of the male jurors had discussed the evidence in

the case and the possible verdicts. This affidavit was prepared by petitioner's defense attorneys two months after they had met with Howard in their Macon office to discuss the possibility that the jury may have been influenced by outside contacts during the trial. Howard allegedly made the statements contained in the affidavit during that meeting. The affidavit was shown to Howard at the defense attorney's office and he signed it.

Thereafter, Howard signed a second affidavit in the presence of Crawford County Sheriff O'Neal and District Attorney Walker Johnson in which he denied that he had had any conversation with any juror about the case. In a deposition of Howard taken on April 27, 1979 he swore that this affidavit was written in his own language and was not a result of threats that he would lose his job, or any other type of pressure. (pp. 31, 45). A hearing was held by the trial judge on November 22, 1979 regarding the Howard affidavits at which time Howard denied that he had had any conversations with the jurors during the trial and denied telling the defense attorneys otherwise. The trial judge denied petitioner's motion for a new trial.

At his deposition Howard again denied that he told the two defense attorneys that he had discussed the case with any of the jurors. (pp. 18, 24). He stated, however, that he did discuss the case with one of the three jurors, Aaron Solomon, a week or two after the trial. (p. 19). Howard explained that the statements in the affidavit were a result of the attorneys misunderstanding and misquoting what Howard told them at the meeting. (p. 36). Howard testified that, although he read the affidavit, he did not recall discussing it at the time he signed and would not have signed if he had realized that it stated that he discussed the case with the jurors. (pp. 26, 52).

Defense attorney Brown testified in a deposition taken on May 26, 1979 that, following the hearing concerning the affidavits, he ran into Howard outside the courthouse and Howard stated in the words of Mr. Brown, that "he regretted having to take the position he took in the courthouse but he had no choice." (p. 15). This statement is obviously ambiguous without some further explanation. Howard did not indicate what he meant, and Mr. Brown did not ask. Mr. Brown did not further pursue the matter.

 Prejudicial private communications between jurors and third persons, or court officers such as a bailiff, are prohibited. *See, Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); *Remmer v. United States,* 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956); *United States v. Albert,* 595 F.2d 283 (5th Cir. 1979). However, there is a presumption of jury impartiality, and the initial burden is on the petitioner to establish that the alleged private communications between the bailiff Mr. Howard and the three male jurors actually took place.

 Having considered all of the evidence of record on this question, the court finds that petitioner has failed to show that Mr. Howard did in fact discuss the case with the jurors. Although the evidence is conflicting, Mr. Howard repeatedly denied that he discussed the case with any of the jurors, and denied that the statements in the affidavit written two months after the statements supposedly were made are an accurate recitation of what he told the defense attorneys. Most importantly, each of the three male jurors with whom Mr. Howard allegedly discussed the case—Mr. Hollingshed, Mr. Solomon, and Mr. Charles Howard, the bailiff's cousin—submitted an affidavit denying that he discussed any aspect of the case with Mr. Howard or that he even talked with Mr. Howard at all during the week of the trial. Having failed to prove the alleged conversations between the bailiff and members of the jury, petitioner has failed to establish that he was denied an impartial jury.

Petitioner also contends that members of the jury discussed the case with each other in violation of the court's instructions not to discuss the case between themselves until they retired to the jury room to deliberate. In Bailiff Howard's second affidavit he

stated that he "believed" he heard some jurors discussing the case. Mr. Howard testified at his deposition, however, that he did not actually hear what the jurors were saying, and merely assumed they were talking about the trial. The three jurors who submitted affidavits swore therein that they did not discuss the case with any other juror. Petitioner has failed to prove that any of the jurors discussed the case among themselves.

For all of the above stated reasons, this petition for habeas corpus relief is hereby DENIED in its entirety.