John Lee SHAW, Petitioner,

v.

Robert S. BONEY, Warden, Arthur K. Bolton, Attorney General of the State of Georgia, Respondents.

No. 81–7136.

United States Court of Appeals, Eleventh Circuit.

Jan. 10, 1983.

F. Robert Raley, Macon, Ga., for petitioner.

John C. Walden, Sr., Asst. Atty. Gen., and Daryl A. Robinson, Staff Asst. Atty. Gen., Atlanta, Ga., for respondents.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

PER CURIAM:

This case stems from a long and bitter feud between the Shaw family and Danny Ray. Tragically, the feud ended when John Shaw shot and killed Ray as Ray sat in his truck on a road bordering the Shaw farm. John Shaw subsequently was tried and convicted of first-degree murder in a Georgia state court. On appeal, the Georgia Supreme Court upheld Shaw's conviction. *Shaw v. State,* 241 Ga. 308, 245 S.E.2d 262 (1978). Shaw then commenced these habe-

as corpus proceedings in the district court. The district court denied relief. *Shaw v. Stone,* 506 F.Supp. 571 (M.D.Ga.1981). Shaw now appeals, raising several grounds for reversal.

Shaw's main argument on appeal is that the state trial court violated his due process rights by admitting into evidence a "double hearsay" threat from Shaw to Ray.[1] The alleged hearsay violation occurred when Malcolm Giles was called to testify for the prosecution as a rebuttal witness. During direct examination, Giles indicated that he had spoken with Ray the day of the shooting. The prosecutor then asked:

Q. Okay. Now, did Danny [Ray] talk to you concerning anything about the Shaws, what they related to him?

A. Yes, sir.

At this point defense counsel objected on the ground that Giles' answer would be "irrelevant hearsay." After a discussion at sidebar, the trial judge overruled the objection and permitted the testimony "[s]olely for the purpose of showing any state of mind." Record, vol. 3, at 747. The prosecutor resumed his questioning of Giles:

Q. What did [Ray] say John Shaw told him?

A. That he wasn't going to fight him anymore, that if he ever caught him at the right place at the right time, he was going to kill him.

Q. ... How long was this before his death would you say?

A. I don't remember.

Q. Was it shortly before? Do you know if it was a month, two months or—

A. It was longer than that. I just don' remember.

Q. Your best estimate of time?

A. Eight months.

If Giles was evasive on direct examination, he was completely obstinate on cross-examination. When defense counsel at-tempted to elicit the circumstances surrounding the alleged threat, the following discussion ensued:

Q. Where were you when you were told this?

A. I don't remember.

Q. You don't know where you were when a man told you something like that?

A. No, sir.

Q. Were you at Fort Valley?

A. I don't remember.

Q. Were you in Georgia?

A. I was in Georgia.

\* \* \* \* \* \*

Q. Were you under the influence of intoxicants?

A. I don't know.

\* \* \* \* \* \*

Q. Well, was this in a downtown area or was it out in the middle of the country somewhere?

A. I don't remember.

Q. Was it in a bar?

A. I don't remember.

Q. Was it in a church house?

A. I don't remember.

Q. Who all was there?

A. I don't know.

\* \* \* \* \* \*

Q. You don't know what would leave you in such a mental vacuum as to what you've testified about?

A. I don't remember.

Q. And you don't know whether it was daytime or nighttime?

A. No, sir.

Q. You don't know whether you were asleep or awake?

A. I imagine I was awake.

Record, vol. 3, at 748–49.

On direct appeal to the Georgia Supreme Court, Shaw challenged the admission of Giles' testimony; however, the court ruled

---

**1.** We note that Shaw never presented this due process claim to a state court and thus never exhausted it. We have not been provided with the briefs on Shaw's direct appeal to the Georgia Supreme Court. *See* Federal Habeas Rule 5. It is patent from the Georgia Supreme Court's opinion, however, that no due process claim was presented to that court. Nevertheless, the state has not raised Shaw's failure to exhaust this claim. Thus, we decide it. *See Lamb v. Jernigan,* 683 F.2d 1332, 1335 n. 1 (11th Cir.1982).

that defense counsel's objection had not been specific enough to preserve the point for review. *Shaw v. State,* 241 Ga. at 310, 245 S.E.2d at 265.[2] Notwithstanding this ruling, the court went on to recognize implicitly the inadmissible nature of the alleged threat. *Id.*[3] On federal collateral review, the district court denied habeas relief because the alleged error "was not so prejudicial as to have denied petitioner fundamental fairness." 506 F.Supp. at 574.[4]

In reviewing the evidentiary determination of a state trial judge, we are mindful of the fact that we do not sit as a " 'super' state supreme court." *Meyer v. Estelle,* 621 F.2d 769, 771 (5th Cir.1980); *Cronnon v. Alabama,* 587 F.2d 246, 250 (5th Cir.), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979); *Alvarez v. Estelle,* 531 F.2d 1319, 1322 (5th Cir.1976), *cert. denied,* 429 U.S. 1044, 97 S.Ct. 748, 50 L.Ed.2d 757 (1977). Unlike a state appellate court, we are not free to grant the petitioner relief simply because we believe the trial judge has erred. The scope of our review is severely restricted. Indeed, the general rule is that a federal court will not review a trial court's actions with respect to the admission of evidence. *Nettles v. Wainwright,* 677 F.2d 404, 414 (5th Cir. 1982) (citing *Lisenba v. California,* 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941)). A state evidentiary violation in and of itself does not support habeas corpus relief. *Bryson v. Alabama,* 634 F.2d 862, 864 (5th Cir.1981). Before such relief may be granted, the violation must rise to the level of a denial of "fundamental fairness." *Id.* at 865; *Dickson v. Wainwright,* 683 F.2d 348, 350 (11th Cir.1982); *DeBenedictis v. Wainwright,* 674 F.2d 841, 843 (11th Cir. 1982); *Meyer v. Estelle,* 621 F.2d 769, 771 (5th Cir.1980); *Anderson v. Maggio,* 555 F.2d 447, 451 (5th Cir.1977); *Woods v. Estelle,* 547 F.2d 269, 271 (5th Cir.), *cert. denied,* 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977).

In the context of state evidentiary rulings, the established standard of fundamental fairness is that habeas relief will be granted only if the state trial error was "material in the sense of a crucial, critical, highly significant factor." *Hills v. Henderson,* 529 F.2d 397, 401 (5th Cir.), *cert. denied,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976) (quoting *Corpus v. Beto,* 469 F.2d 953 (5th Cir.1972), *cert. denied,* 414 U.S. 932, 94 S.Ct. 236, 38 L.Ed.2d 162 (1973)). Moreover, application of this standard has been notably one-sided, consistent with the reluctance of federal courts to second-guess state evidentiary rulings. This court has established a well-documented resistance to granting relief when a habeas petition alleges a federal claim based merely on a state evidentiary ruling. *See Woods v. Estelle,* 547 F.2d at 271.[5]

2. Two state supreme court judges dissented without opinion to the court's disposition of Shaw's challenge to Giles' testimony.

3. After ruling that the objection was not specific enough to preserve the point for appeal, the court stated: "Had the objection been stated with the added specificity, at least part of the testimony could have been given in admissible form by deleting the quotation of the threat allegedly made against the deceased, since the evidence was relevant to Ray's state of mind." 241 Ga. at 310, 245 S.E.2d at 265.

4. In his federal habeas petition, Shaw alleged only that the admission of the evidence resulted in a denial of due process under the fourteenth amendment. Shaw raised no claim based on the confrontation clause of the sixth amendment. Therefore, we do not decide such a claim.

5. *See, e.g., Dickson v. Wainwright,* 683 F.2d 348, 350 (11th Cir.1982) (admission of a knife similar to a knife seen in defendant's possession did not render the trial fundamentally unfair); *Passman v. Blackburn,* 652 F.2d 559, 568 (5th Cir.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982) (inadmissible testimony going to the strength of witness' identification was not critical and did not render the trial fundamentally unfair); *Bryson v. Alabama,* 634 F.2d 862, 865 (5th Cir.1981) (evidence that defendant escaped from a penitentiary was not critical to defendant's conviction so as to render his trial fundamentally unfair, but may have affected the jury's imposition of sentence). *But see, e.g., Panzavecchia v. Wainwright,* 658 F.2d 337, 341 (5th Cir.1981) (admission of evidence of other offenses rendered the trial fundamentally unfair).

In view of the very limited scope of our review, we cannot conclude that the admission of Giles' testimony, concerning the alleged threat, rendered Shaw's entire trial fundamentally unfair. Giles' testimony was neither a critical nor even a highly significant factor in the prosecution's case. As the district court observed:

> There was considerable evidence presented at trial regarding the ill feelings between the Shaws and the victim, including testimony as to specific confrontations during which threats and even blows were exchanged. *See,* Testimony of Bobby Joe Causey, Tr. 728; Testimony of Allen O'Neal, Tr. 758; Testimony of Robert Ray, Tr. 771, 776. Moreover, the cross examination of Malcolm Giles by petitioner's attorney cast serious doubt on the credibility of Giles' testimony, which the jury could not help but recognize.

506 F.Supp. at 574. We would note also that the evidence against Shaw was overwhelming.[6] The prosecution demonstrated that Shaw shot Ray in the back after a long series of heated disputes between the two men. Moreover, Shaw's defense of justifiable homicide was significantly weakened by a lack of physical evidence. Although both Shaw and his brother testified that Ray had a gun at the time of the killing, the police were unable to find the alleged gun in Ray's truck. For these reasons, the admission of Giles' testimony does not justify habeas corpus relief.

Shaw's second evidentiary challenge is similarly unavailing. He alleges that it was prejudicial error for the state trial court to exclude a copy of Ray's conviction, nine months before his death, of obstructing a police officer near Shaw's farm. Applying the analysis set forth above, we will assume *arguendo* that the exclusion was erroneous. Nevertheless, the error again failed to render the trial fundamentally unfair. Ample testimony was admitted concerning Ray's conduct. A blow-by-blow account of the events leading to Ray's guilty plea also was admitted. The only thing excluded was a copy of the final adjudication.

The remaining issues Shaw raises do not merit extended discussion. His allegations of misconduct on the part of the prosecutor, some of the jurors and the bailiff do not justify granting a writ of habeas corpus. Similarly, the failure of the Chief Justice of the Georgia Supreme Court to attend oral argument of Shaw's direct appeal, the denial of which he participated in, does not rise to the level of a constitutional violation which would support habeas relief. The district court's order denying the writ addresses each of these arguments in much greater detail, and properly disposes of them.

The judgment of the district court is AFFIRMED without prejudice to any Sixth Amendment Confrontation Clause[7] claim petitioner may hereafter present.

---

**6.** Thus, we reject Shaw's claim that there was insufficient evidence to support his conviction. "[V]iewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jack-* son v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

**7.** See n. 4, *supra.*