William E. CRANK, Petitioner–Appellee,

v.

Jack R. DUCKWORTH and Attorney General of the State of Indiana, Respondents–Appellants.

No. 91–2573.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1991.

Decided July 22, 1992.

Susan M. Miller, Middlebury, Ind. (argued), for petitioner-appellee.

David A. Nowak, Deputy Atty. Gen. (argued), Office of Atty. Gen., Indianapolis, Ind., for respondents-appellants Jack R. Duckworth and Atty. Gen. of State of Ind.

Before COFFEY and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

COFFEY, Circuit Judge.

Petitioner William Crank sought, and received, a writ of habeas corpus on his 1974 burglary conviction. The state of Indiana requests reversal of the district court's decision, arguing that the state court dismissed petitioner's claim pursuant to an independent and adequate state procedural rule, and that he has not demonstrated the cause and prejudice necessary to excuse the procedural default. We agree, and reverse.

I. BACKGROUND

In February of 1974, an Indiana jury convicted the petitioner of second degree burglary, and he received a two- to five-year period of confinement. At sentencing, the court informed Crank of his right to appeal, and he stated that he wished to do so. Accordingly, the court instructed Crank's trial attorney to perfect an appeal. In Indiana, the first step toward perfecting an appeal is filing a motion to correct errors. Ind.Code, tit. 35, Crim.P.Rule 16.

* Judge Robert A. Grant, of the Northern District of Indiana, sitting by designation.

Crank's counsel, however, never filed a motion to correct errors, and thus failed to perfect Crank's appeal.

The petitioner did not contact his attorney about the progress of his appeal either during his incarceration or after his release, when he relocated in the town where the attorney lived. Indeed, he was unaware that his conviction had not been appealed until 1986, when he asked a public defender to look into it. Crank alleges that he did not research the issue earlier because he did not have the money to hire an attorney to do the legwork, and only learned in 1986 that the public defender would do it for free.

Upon learning that his conviction had not been appealed, petitioner sought permission to file a belated motion to correct errors, and thus initiate the appeal process, under Rule 2 of Indiana's Rules for Post-Conviction Remedies. Ind.Code, tit. 35, Rule PC 2 ("Rule 2").[1] The validity of the 1974 conviction had become important to Crank because in 1981 he was convicted on two counts of battery, and his sentence for that crime had been increased by thirty years under a recidivist statute that took account of the 1974 crime. Crank hoped that if he could prove the 1974 conviction invalid, he might not have to serve the extra thirty years.

Rule 2 allows a defendant to file a belated motion to correct errors where (1) no timely and adequate motion was ever filed, (2) the failure to file such a motion was not the defendant's fault, and (3) the defendant has been diligent in requesting permission to file a belated motion to correct errors. *Id.* Relying on precedent from the Indiana Supreme Court, the state court refused to give Crank permission to file a belated motion to correct errors, finding that he had not been diligent in seeking to file such a motion, having waited twelve years to do so. *See Indiana v. Dobeski,* 275 Ind. 662, 419 N.E.2d 753 (1981) (fourteen years too long); *Wilhite v. State,* 273 Ind. 56, 402 N.E.2d 1211 (1980) (five years too long).

The state Court of Appeals affirmed and the Indiana Supreme Court denied a petition for transfer.

Crank then filed a petition for a writ of habeas corpus in the district court. The district court initially granted the writ, but then withdrew its order to consider the applicability of *Melang v. Cook,* 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989). Applying *Melang,* the court decided it was without jurisdiction because petitioner was no longer "in custody" on his 1974 conviction. That sentence had expired, and Crank was being detained as a result of his 1981 battery conviction. This court reversed, holding that Crank could challenge the constitutionality of his 1974 conviction because it had been used to classify Crank as an habitual offender, a designation that added thirty years to the sentence for his 1981 crime. *Crank v. Duckworth,* 905 F.2d 1090 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 712, 112 L.Ed.2d 701 (1990). On remand the district court granted the writ, with the condition that petitioner could be retried within 120 days.

## II. DISCUSSION

The parties agree that petitioner has procedurally defaulted any claims arising from his 1974 conviction by failing to be diligent in seeking permission to file a belated motion to correct errors under Rule 2. Where, as here, a state court declines to address a prisoner's federal claims because the prisoner failed to satisfy an independent and adequate state procedural rule, the federal habeas court will only review those claims if the petitioner can demonstrate cause for and prejudice from the default, or that justice will miscarry if the claims are not reviewed. *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *see also Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). The district court found that Crank had proven both cause and prejudice, and we review the propriety of that decision.[2]

---

**1.** Rule 2 was modified in 1989, but in ways that are not relevant to this case.

**2.** Crank has not argued that a miscarriage of justice will occur if we refuse to review his claims, and thus we do not address the issue.

A prisoner may demonstrate cause for a procedural default by showing "that some objective factor external to the defense impeded ... efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1985); *see also Coleman,* 111 S.Ct. at 2566 (" 'cause' under the cause and prejudice standard must be something *external* to the petitioner, something that cannot be fairly attributed to him."); *Barksdale v. Lane,* 957 F.2d 379, 385 (7th Cir.1992). Cause for a default also exists where there has been ineffective assistance of counsel. *Coleman,* 111 S.Ct. at 2567. Crank argues that his attorney's failure to perfect an appeal of the 1974 conviction was ineffective assistance, meaning that he has established cause for his default. The government admits his attorney was constitutionally ineffective, but argues that the reason for the default was not Crank's counsel's error, but rather his (Crank's) lack of diligence in failing to even investigate the status of his appeal for twelve years. Lack of diligence, the argument proceeds, is a personal failure, not an external impediment providing an excuse for a default.

As support for its position, the government relies on *Henderson v. Cohn,* 919 F.2d 1270 (7th Cir.1990). In *Henderson,* the petitioner had waited twenty years to bring a post-conviction challenge to the voluntariness of two of his guilty pleas. The state court found that this delay constituted laches and held that the petitioner had therefore defaulted his claims. Petitioner argued that his illiteracy constituted cause for his default because it prevented him from bringing his claim earlier. We rejected this argument, finding that "illiteracy is not the type of external impediment to which the Supreme Court alluded in *Murray v. Carrier.*" *Id.* at 1273. Moreover, "[a] person may be illiterate yet still have the good sense and mental competence to be concerned and inquire about his convictions.... Henderson had an obligation to take a minimal interest in his own defense." *Id.* at 1272; *cf. McCoy v. Newsome,* 953 F.2d 1252, 1258 (11th Cir.1992) (petitioner's lack of education not an external factor excusing procedural default); *Stanley v. Lockhart,* 941 F.2d 707, 710 (8th Cir.1991) (same); *Hughes v. Idaho State Board of Corrections,* 800 F.2d 905, 909 (9th Cir.1986) (illiteracy not "cause" for procedural default); *but see Murray,* 477 U.S. at 488, 106 S.Ct. at 2645 (lack of knowledge can be "cause" for a default when it is the result of interference by officials or because the factual or legal basis for a claim was not reasonably available). The government contends that this reasoning is equally applicable to the instant case, where the state court found a lack of diligence on Crank's part due to his failure to display any interest in the status of his appeal for twelve years. Furthermore, the government points out that Crank has offered no excuse for this delay, no suggestion of an external force that prevented him from perfecting his appeal.

Crank, in turn, attempts to distinguish *Henderson,* arguing that it merely held that illiteracy is not sufficient cause for a procedural default, whereas ineffective assistance of counsel, on which he relies, is. *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. To choose between these competing arguments, we must initially determine the reason for petitioner's default in the state court. If the default was the result of ineffective assistance of counsel, then under *Murray* there is cause to forgive it. If, on the other hand, the default is the result of Crank's own delay, then *Henderson* says there is no cause to forgive it, because the delay was not induced by some external force.

The state court has made our task a relatively simple one. It held that the petitioner had not been diligent in pursuing his right to appeal. *Cf. Dobeski,* 419 N.E.2d 753; *Collins v. Indiana,* 420 N.E.2d 880 (Ind.1981). Significantly, the court based its holding on Crank's own twelve-year delay, *not* on his attorney's failure to file a motion to correct errors within the prescribed time period. Even after his attorney neglected his responsibility, petitioner still had a duty, and could have perfected his appeal by exercising diligence in obtaining permission to file a belated motion to

correct errors. Ind.Code, tit. 35, Rule PC 2. His failure to do so for twelve years[3] caused his default; had he been diligent we would not have this case before us.

Like the illiterate petitioner in *Henderson,* Crank may not have understood the ins and outs of appealing a criminal conviction, but he did not have to. He could have inquired of his attorney concerning his appeal, or inquired at the courthouse, or asked the attorneys who defended him on more recent charges to look into it, or gone to the public defender and sought guidance. As Judge Flaum stated in *Henderson,* a defendant or petitioner "has an obligation to take a minimal interest in his defense." This obligation does not end at sentencing, but continues on appeal. The only plausible reason for Crank's delay is that he only served a year on his 1974 sentence, and after his release he probably didn't care one way or the other how his appeal came out—it wasn't as if he could get the year back if he won. Indeed, the only reason he cares about the appeal now is because that conviction, when combined with others, made him eligible for classification as an habitual offender, adding an extra thirty years to his 1981 sentence. Yet, though we may understand his lack of diligence, we cannot use it as cause to forgive his default. What Crank fails to recognize is that there have actually been two defaults in this case: the failure to appeal the 1974 conviction, which may be ascribed to his attorney in that case, and the failure to be diligent in seeking to file a belated motion to correct errors under Rule 2, for which Crank alone is responsible. The first is excusable, but the second is not. And since it is the second default that the state court relied on in preventing Crank from pursuing his postconviction remedies, it is the only one we care about. This default may not be excused because it was the result of Crank's own lack of diligence, rather than some

external force. Petitioner knew in 1981 that the 1974 conviction had been used to increase the length of his confinement. If he was truly interested in challenging that conviction he had an obligation under Rule 2 to act diligently. By not doing so he ran afoul of a state procedural rule, and as a result the federal courts will not entertain his claims.[4]

For the reasons given, the district court's grant of Crank's petition is

Reversed.

FLAUM, Circuit Judge, concurring.

Although I agree with the decision reached by the majority, I write separately to further amplify why Crank's present effort fails despite his attorney's admitted ineffectiveness in failing to perfect a direct appeal of the 1974 conviction. I do so in part because the district court apparently believed its hands to be tied in light of *Crank v. Duckworth,* 905 F.2d 1090 (7th Cir.1990) (*Crank I*).

*Crank I* held that because Crank was sentenced under a recidivist statute to an additional 30 years, "time the state could not have imposed but for the 1974 conviction," he is in custody on a sentence that may have been enhanced in violation of *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (misinformation of constitutional magnitude—*i.e.,* reliance on an invalid prior conviction—authorizes relief from current sentence). Therefore, according to *Crank I,* the district court must determine "whether the 1974 conviction is constitutionally valid." 905 F.2d at 1092. On remand, the district court stated (with obvious reluctance) that it must grant the writ, "bound as it is by an explicit decision of the Court of Appeals and unable to find a principled basis for procedural default, and faced with an admitted ineffective assistance of counsel in

---

3. As the concurrence notes, it is significant that this twelve-year delay included five years after the 1974 conviction was used to drastically increase Crank's 1981 sentence. Had this been the only delay it is still likely that the state court would have denied his motion as untimely. *Wilhite, supra.*

4. As there is no cause for the default, we need not reach the issue of prejudice. *Barksdale,* 957 F.2d at 386.

the 1974 burglary conviction." Mem. and Order at 4 (May 29, 1991). Despite its possible implications to the contrary, however, *Crank I* did not mandate the district court to grant the writ.

As the majority recognizes, the Indiana state court had based its procedural default determination on Crank's own delay, not on his attorney's failure to file a motion to correct errors within the prescribed time period. That is, the procedural default relevant to the present post-conviction proceeding occurred through Crank's own failure to comply with state procedural rules regarding post-conviction proceedings. Although Crank's attorney failed to perfect Crank's direct appeal—inaction which, the state concedes, constituted ineffective assistance of counsel under *Strickland*—Crank nevertheless could have overcome this by complying with Indiana Post–Conviction Rule 2, which allows a defendant to file a belated motion to correct errors provided that "the defendant has been diligent in requesting permission" to file the belated motion. *See* Ind.Code, tit. 35, Post-Conviction Rule 2(c). The true default, in other words, was Crank's laxity in pursuing his post-conviction remedy (the Rule 2 belated motion to correct errors) rather than the default on direct appeal which resulted from his attorney's failure to file the motion.

*Coleman v. Thompson,* — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), explicitly acknowledged a distinction between default on direct appeal and default in a post-conviction proceeding. The Supreme Court, in declining to hold that the defendant had cause for procedural default because of his counsel's failure to file timely notice of appeal in a state court habeas proceeding, explicitly distinguished the two scenarios:

> Where a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the State, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and the harm to state interests that federal habeas review entails. A different allocation of costs is appropriate in those circum-stances where the State has no responsibility to ensure that the petitioner was represented by competent counsel. As between the State and the petitioner, it is the petitioner who must bear the burden of a failure to follow state procedural rules.

*Id.* 111 S.Ct. at 2567; *see also Morrison v. Duckworth,* 898 F.2d 1298, 1301 (7th Cir. 1990). Here, the state court determined that Crank's state habeas appeal was untimely pursuant to Indiana Post–Conviction Rule 2. As *Coleman* put it:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman,* 111 S.Ct. at 2565. Here, Crank defaulted his claim pursuant to Rule 2, an independent and adequate state procedural rule. Because the default resulted from his own lack of diligence, he cannot demonstrate cause and therefore is barred from pursuing his habeas claim in federal court.

This seems, in light of *Crank I,* to lead to a somewhat incongruous result (which, perhaps, the district court implicitly recognized in granting the writ). As noted, *Crank I,* in line with *Lowery v. Young,* 887 F.2d 1309 (7th Cir.1989), held that a prisoner whose present custody has been augmented by a previous sentence may contend that the current custody violates the Constitution on the ground that the previous sentence was invalid—and, thus, may challenge the constitutionality of the previous sentence. Yet here, we hold that a prisoner who attempts to make that challenge may be precluded by laches—*i.e.*, procedural default—based on a lack of diligence in failing to do so earlier. When, then, would the prisoner whose current sentence is enhanced partly as a result of a prior conviction, and who now challenges that prior conviction, *not* be barred by lach-

es? *Crank I,* it would appear, merely opens one door to lead to another, closed one.

But perhaps we need not (at least for purposes of the present case) interpret the laches bar quite so broadly. Crank claims that the fact that he served only a year and a day on his 1974 conviction lessened the importance of an earlier inquiry into the status of his appeal. While, as the majority appropriately notes, we can perhaps understand his lack of diligence *prior* to the present conviction, it does not excuse his five-year delay in inquiring about the failure to appeal *subsequent* to his second conviction. Crank was convicted in 1981 of the felony underlying his current confinement, yet he waited until 1986 to challenge the 1974 conviction which led to his current sentence enhancement. According to Crank, he was unaware until that time that the public defender would check into prior convictions and appeals. This scenario, however, mirrors *Henderson v. Cohn,* 919 F.2d 1270, 1272 (7th Cir.1990), in which we stated that a defendant "has an obligation to take a minimal interest in his own defense." Crank's failure to inquire about his 1974 conviction until 1986—five years after his current conviction and twelve after his prior one—is not the result of an external impediment such as the ineffective counsel on direct appeal, but rather his own remiss.

Because Crank's inaction is insufficient to establish cause, I agree with the majority that Crank has therefore waived his constitutional claim.