## 57433. CLARK v. THE STATE.

QUILLIAN, Presiding Judge.

This is an appeal from a conviction for armed robbery and aggravated assault. Mr. Odell Still, a pre-med student at Mercer University, went to a local Church's Fried Chicken restaurant to pick up food ordered by fellow employees working the night shift in the operating room. After working his way to the head of the line to place his order, an individual asked him if he could place his order next to get an order of french fries he had forgotten to order earlier. Mr. Still permitted the individual to place his order ahead of him. After receiving his order Still went to his car to return to the hospital. The same individual asked him if he could ride back toward the hospital with him. Still said yes. After riding some distance, the man "came up with a gun." Still was told to keep driving. Still testified: "I thought that I might have to identify him later, so I tried to look at him a little closer." When he stopped the car, the person demanded and received Still's wallet, and started to get out of the car. At that point he appeared to change his mind, "turned around and leaned back into the car and pointed his gun at [Still] again and he pulled the trigger." Still retained consciousness and drove his car to the nearest hospital and blew the horn until someone came out and found him. He identified the defendant as his attacker. Defendant appeals his conviction. *Held:*

1. The defendant contends the "pre-trial identification procedure was impermissibly suggestive and tainted the line-up and in-court identification." We do not agree.

Mr. Still stated that the area in Church's was "brightly lit" and he had "a good opportunity at that point to observe him and to observe his facial features." He also observed the defendant when he approached him in the

parking lot and asked for a ride, while he was in the car during the ride, when he pulled the gun on him, more closely after he had pulled the gun, and finally when he was facing him as he was shot. Mr. Still stated there was no doubt in his mind that the defendant was the man.

On cross examination Mr. Still remembered that in Church's he observed that "his eyes were strange." The defendant's left eye "is crossed." He did not tell the police that the defendant had crossed eyes but did tell them "the eye was funny." This was confirmed by the police. He was shown a "composite drawing" made by the police and said "that looks like him." He was also shown a photographic lineup on two different occasions by the police. In the last photographic lineup, there were two pictures of the defendant — along with a total of 16 pictures in all. He did not identify the defendant. The detective who presented the photographs testified that Mr. Still told him that he could identify the defendant *in person* but doubted he could identify anyone from a picture. A physical lineup was arranged as the defendant "stated that he would gladly stand in a lineup." Just before the lineup was held the defendant informed the police "he'd changed his mind . . . He said he wasn't standing in a lineup with or without a lawyer." The police proceeded with the lineup. All were black males, within a few years of the same age, as close as possible — the same height, "the same build and set," and "as close the same hair style." When Mr. Still saw the defendant come in "[h]e got extremely nervous and starting shaking all over . . . He was shaking so bad he would use — try to use both hands to mark" his card with the number of the individual he selected. "There was no hestitation . . ." He selected the defendant. The photograph of the persons in the physical lineup was shown to the jury and was inserted in the record for our use.

An employee of Church's who made the sales to Mr. Still and to the person who broke into the line ahead of him (the defendant) described that person to the police and helped in the construction of the composite photograph. She identified the defendant in the lineup but placed a question mark by his number to show doubt. She also identified the defendant in the courtroom but

continued to express "doubt." She also had been shown the photo lineup by the police but could not identify anyone.

Defendant contends that the use of the "composite" drawing and the photo lineup with the defendant's photo included therein "was impermissibly suggestive of who the police suspected" and led to the witnesses' selection of the defendant from the physical lineup. We do not agree. The United States Supreme Court has held that the "primary evil to be avoided" is the "substantial likelihood of irreparable misidentification." Coleman v. Alabama, 399 U. S. 1 (90 SC 1999, 26 LE2d 387). There is a two-step inquiry: 1. the threshold inquiry is whether the identification procedure used was "impermissibly suggestive," and only if it was do we reach the second issue — 2. whether there was a "substantial likelihood of irreparable misidentification." Gravitt v. State, 239 Ga. 709, 710 (239 SE2d 149).

We do not find the procedure employed to be impermissibly suggestive. See Heyward v. State, 236 Ga. 526 (1) (224 SE2d 383). We find nothing suggestive to a witness when showing him a composite drawing of a suspect where the witnesses themselves provided the data from which the drawing was constructed. Use of a photo lineup per se is not suggestive. Dodd v. State, 236 Ga. 572 (224 SE2d 408). "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U. S. 377, 384 (88 SC 967, 19 LE2d 1247). There was no showing in the instant case that the photographic lineup was suggestive. Thornton v. State, 238 Ga. 160 (1) (231 SE2d 729).

The critical question in all pre-trial identification issues is whether the identification during the trial is based on the witness' observation during the incident, or his identification at trial was based on procedures used by the police after the incident — e.g. composite drawings, photo lineup, one man showup, or a multiple person physical lineup. It appears that both the prosecution and

the defense studiously avoid this issue as the question is never asked of the witness by anyone. The issue is always fought out by innuendo, inference, insinuation and implication. If either party would ask this question of the only person who knows the answer — the witness, it would aid the trial and appellate courts in resolving this issue. We find this enumeration to be without merit.

2. The defendant objected to the doctor's testimony concerning the operation on Mr. Still after he was shot. The objection was overruled. Defendant's contention is that the charge was "aggravated assault," and this offense is defined by the Code as: "A person commits aggravated assault when he assaults . . . (b) with a deadly weapon." Code Ann. § 26-1302 (CCG § 26-1302; Ga. L. 1968, pp. 1249, 1280; 1976, p. 543). Thus, they reason that there is no requirement that a victim be actually injured and the crime is complete without proof of injury. Counsel is correct. *Scott v. State,* 141 Ga. App. 848, 849 (234 SE2d 685).

It is also argued that evidence must relate to the issue being tried and irrelevant matter should be excluded. Again, counsel is correct. Code Ann. § 38-201 (Code § 38-201). Thus, they argue, as the nature and extent of the injury is not an element, the fact that the consummated assault was followed by actual harm is irrelevant. At this point, we diverge in opinion. It is not unheard of for a defendant to claim that the instrument he used was not a deadly weapon. See *Watts v. State,* 142 Ga. App. 857 (4) (237 SE2d 231) (sawed-off shotgun). Proof that the weapon fired and the nature and extent of the injury can be admissible to prove that the weapon was a deadly weapon. *Haygood v. State,* 142 Ga. App. 627 (3) (236 SE2d 696).

Furthermore, admission of evidence — including the determination of relevancy rests largely within the sound discretion of the trial judge, and if it has a tendency to establish a fact in issue — as here, the dangerous nature of the weapon used, that is sufficient to make such evidence relevant and admissible. *Alexander v. State,* 239 Ga. 108, 110 (236 SE2d 83). Accord, *Patterson v. State,* 233 Ga. 724 (2) (213 SE2d 612).

Other grounds exist for lack of merit in this

enumeration. Admission of irrelevant evidence is not a ground for reversal unless it can be shown the evidence was prejudicial. *Southwest &c. Assn. v. Wainwright,* 241 Ga. 355, 357 (245 SE2d 306). Secondly, mere objection to evidence without a specific motion for a mistrial or other curative instructions, presents nothing for review. *Parrott v. State,* 144 Ga. App. 835 (2) (243 SE2d 97). Defendant did not request any instructions or move for a mistrial. Last, but not least, the judge has discretion to exclude evidence if he determines its prejudicial impact substantially outweighs its probative value, and we cannot say in this instance that he abused his discretion. *Shaw v. State,* 241 Ga. 308 (7) (245 SE2d 262).

3. The state offered in evidence a statement by the defendant that "he would gladly stand in a lineup." On cross examination, defense counsel queried the witness: "In that same statement and as part of that same statement, he said that he would take a lie detector test?" The state's objection was sustained. See *Rozier v. State,* 124 Ga. App. 481 (3) (184 SE2d 203). Later, the state agreed to stipulate to such testimony but the court required the witness to be recalled. The detective then testified that the defendant stated he wanted to be in a lineup and agreed to take a polygraph test. Due to the corrective procedure followed, we find no prejudicial error. Cf. *Shaw v. State,* 241 Ga. 308 (6), supra.

4. Defendant avers that the state's refusal of the defendant's request for a polygraph examination "constitutes a deprivation of his Sixth and Fourteenth Amendment rights to the effective assistance of counsel." Counsel cites Pinson v. Williams, 410 FSupp. 1387 (SD Ohio 1975) as authority for his enumeration. In Pinson, a confined defendant was prevented from taking a polygraph examination arranged by his defense counsel. The confinement authorities denied the polygraph operator and his machine access to the defendant. The court held that it was not for the court or the jailor "to second-guess professional judgments as to the necessity for or the value of a particular pre-trial investigative technique . . . there was an absence of reasonable justification for the refusal to permit counsel meaningful access to their client . . ." First, we are not bound by the

U. S. District Court's decision. Second, Pinson is inapposite on the facts for the defendant in the instant case was not prevented from taking a polygraph examination. His *request* was not acted upon. The defendant's *motion* "that he be subjected to a polygraph test" was filed May 23, 1978, and the trial was held May 23, 24, and 25, 1978. The district attorney stated that it was filed the day before trial, and if it had been brought to him "a week beforehand, I would have been delighted to stipulate the results of the polygraph test," "[b]ut there'd be no way to set something up like that just one day before the trial without delaying the trial again."

Defendant should have asserted any possible right of a defendant to a polygraph examination before trial. A continuance would have been necessary in the instant case as the demand was presented — either on the first day of trial, or the day before. No request for continuance was made before trial, but during the trial the issue was raised and the final word of the court was " . . . my understanding is that it was not [the district attorney's] refusal, if it may be called a refusal, was not a refusal until after it was filed and it was filed on the morning of the trial." No continuance was requested. If it had been, it would have been discretionary with the court. *Davis v. State,* 143 Ga. App. 329 (4) (238 SE2d 289). If a ruling was obtained we have been unable to find it. The defendant cites us only to the refusal of the district attorney to delay the trial until a test could be obtained. We find no prejudice to the defendant from the refusal of a district attorney to delay a trial for the purpose of obtaining a polygraph examination as it would have been admissible only with his consent. *State v. Chambers,* 240 Ga. 76 (239 SE2d 324). For even if the state had permitted the test to be taken, "[n]either an agreement to take a polygraph, nor the taking of one, constitutes a waiver of a right to object to the admission of its results into evidence, absent an express stipulation of the parties as to its admissibility." *Cagle v. State,* 132 Ga. App. 227, 229 (207 SE2d 703) (cited with approval in *Chambers,* supra.)

Counsel for defendant appears to argue that the denial of *the state* to conduct a polygraph upon his client, deprives him — the counsel — of the assistance the test

could have provided. We find no requirement for the state to conduct a polygraph examination solely for the use of a defendant's counsel. The grant or denial of a motion for appointment of experts to assist a defendant lie within the sound discretion of the trial court. *Thomas v. State,* 240 Ga. 393 (1) (242 SE2d 1). Under the facts of this case, we find no abuse of discretion.

*Judgment affirmed. Smith and Birdsong, JJ., concur.*

Submitted March 12, 1979 — Decided April 13, 1979.

*Charles L. Burris, C. Richardson Cook,* for appellant.

*W. Donald Thompson, District Attorney, Thomas J. Matthews, Assistant District Attorney,* for appellee.