## A96A1694. NOWLIN v. THE STATE.
(484 SE2d 14)

ANDREWS, Chief Judge.

Darnell Nowlin[1] appeals from denial of his motion for new trial on his conviction for armed robbery and kidnapping of McClellan, and possession of a firearm during commission of a felony.

1. Viewed with all inferences in favor of the jury's verdict, *Daras v. State*, 201 Ga. App. 512 (1) (411 SE2d 367) (1991), the evidence was that, on February 2, 1995, McClellan was the assistant manager of the Snellville 14 Oaks movie complex. She had released all employees except the projectionist Watts shortly after the last movie had started at 10:30 p.m.

After compiling the receipts, she had made the night deposit at the bank around midnight, accompanied by Officer Smith. Upon returning to the theater, McClellan asked Smith to come in and stay in the lobby because of several recent theater robberies in the metro area. Watts had checked the viewing rooms during the last show and saw only 11 customers in the entire complex. There were only two black customers for the late show that evening, one male and one female, who went into viewing room 12 where Disclosure was showing. There were no customers in viewing room 14.

Earlier, while Watts was playing video games in the lobby, around 11:15 or 11:30 p.m., the black female approached him and asked what time Disclosure was over and if it was the last movie to get out. After McClellan and Officer Smith returned from making the bank deposit, Smith asked her for some change so he could play video games. She went toward the office and passed a black woman in the hallway. As she turned a corner to go into the office and noticed the door ajar, she heard someone walking and turned around to confront a black man about two feet from her holding a silver automatic pistol. He told her to hush and turn around and then grabbed her arm.

---

[1] Nowlin was tried with co-defendant Morgan, whose conviction is not involved in this appeal.

He directed her to the office and, as she started to walk, he began to push her. He took her first to the storage room door and then to the office, a total of 100 feet or more. The man maintained his hold on her the entire time. Although she could not open the manager's safe, she did have the combination to the store safe and opened it for the gunman. As she did so, he took her key ring, which had keys for every lock in the theater on it.

McClellan then heard a black female voice over the man's walkie talkie telling him there was a police officer in the lobby. McClellan had also seen only one black couple in the theater for the last show. After the walkie talkie communication, the man told her to lie on the floor face down, which she did. He then tied her feet and hands with flexicuffs and asked how to get out.

Watts, in the lobby near the alarm panel, noticed that the emergency exit door had been opened in viewing room 14 even though no one had been watching a movie there. Watts and Officer Smith discovered and freed McClellan. Watts then checked Disclosure, finding that the couple had left. Although the theater and parking lot were searched, McClellan's keys were not located.

McClellan identified Nowlin as the man who robbed her. The evidence was sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Nowlin's first enumeration is that the trial court erred in denying his motion to suppress identification information obtained by the police from an investigatory traffic stop.

Pretermitting whether a motion to suppress was the appropriate mechanism for raising this issue, see *State v. Johnston*, 249 Ga. 413 (1) (291 SE2d 543) (1982), and the timeliness of this motion, we consider the trial court's denial of it.

Nowlin's identity was discovered during an investigatory stop made in the early morning hours of December 30, 1994 by Gwinnett Officer Head. Because of the spate of theater robberies, composite drawings of a male and female suspect had been distributed to area theaters. Late on December 29, Officer Head was dispatched to the Snellville Septum Cinemas to check out a suspicious person report. The manager showed him the composite and said that she believed the woman depicted was in the theater with a man. At that time, the woman walked into the lobby and Head could see that her facial features were similar to the composite. Officer Head and his partner decided to conduct surveillance and watched from the game room. They saw the woman walk outside the theater, walk from one end of the building to the other, and then return to the movie. Also, during the movie, both the man and woman went outside the theater once and returned. When the movie ended around 11:25 p.m., the woman left but the man went into another movie and did not leave until 30

minutes later. An officer outside in his personal car saw the woman pick the man up in a white Ford Tempo[2] and notified Head who then picked the car up as it left a restaurant parking lot and followed it about a mile in order to get out of a populated area. Officer Head pulled the car over and asked for identification from the woman driver and the male passenger. The driver was co-defendant Morgan and the passenger was Nowlin. Also, Officer Head observed in the back seat of the car a gym-type bag in which he saw flexicuffs. The stop lasted approximately ten minutes during which the officer ran a computer check on the licenses.

"Even in the absence of probable cause, a police officer 'may stop an automobile and conduct a limited investigative inquiry of its occupants . . . if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.' [Cit.] During this detention, the police, for example, may attempt to determine the person's identity, [*State v. Misuraca*, 157 Ga. App. 361, 365 (276 SE2d 679) (1981)] and ask for a display of driver's license and vehicle registration. [Cit.]" *Mallarino v. State*, 190 Ga. App. 398, 401 (2) (379 SE2d 210) (1989).

We agree with the trial court and adopt his reasoning that this stop was premised upon such a reasonable suspicion. *State v. Wright*, 221 Ga. App. 202, 205 (3) (470 SE2d 916) (1996); *Edwards v. State*, 219 Ga. App. 239, 243 (3) (464 SE2d 851) (1995).

3. Nowlin complains of the denial of his motion in limine which sought to preclude in-court identification by "witnesses" who had been shown a composite drawing of a male suspect.

The only witness who testified that they had been shown the composite before making a photo spread identification, however, was Eric Jones, a witness to a Fayette County robbery introduced as a similar crime. He was not shown the composite by the police, however, but by his manager.

Even assuming that a composite produced from witnesses' descriptions of a suspect can be said to be suggestive at all, see *Clark v. State*, 149 Ga. App. 641, 643 (1) (255 SE2d 110) (1979), "[t]he issue here is not the possible taint of identification due to suggestive pretrial procedures but, rather, the credibility of eyewitnesses to the incident. The due process protection of the Fourteenth Amendment to the United States Constitution protects the citizens against state action rather than against citizen action. In order for the Fourteenth Amendment to come into play in an identification procedure, state action must be involved. [Cit.]" *Lyons v. State*, 247 Ga. 465, 467 (277

---

[2] A white Tempo was mentioned at roll call as possibly involved in these robberies.

SE2d 244) (1981).

There being no state action here, there was no error in denial of the motion in limine.

4. The third enumeration is that similar transactions were allowed into evidence without "timely and sufficient notice" under Uniform Superior Court Rule 31.1.

The State served discovery materials on Nowlin on October 3, 1995, including information on two of the three similar transactions. Notice pursuant to Rule 31.1 was mailed to counsel for Nowlin on November 3, before the trial began on November 13, 1995. The Rule requires notice "shall be given and filed at least ten days before trial unless the time is shortened or lengthened by the judge." The trial court found that notice was given by mailing on November 3 and, even if not timely, he in his discretion determined that the notice contained in previous filings was sufficient. We find no abuse of discretion in this determination. *Quinn v. State*, 221 Ga. App. 399, 403 (4) (471 SE2d 337) (1996).

Nowlin's argument that the notice was insufficient because it did not specify for which of the allowable purposes the evidence was tendered is contradicted by one of the cases he cited, *Hightower v. State*, 210 Ga. App. 386, 387 (2) (436 SE2d 28) (1993). Additionally, that purpose, to prove identity, became apparent at the Rule 31.1 hearing. There was no error.

5. Nowlin's final enumeration of error is that the court erred in not granting his motion for mistrial as a result of witness Turner's "testimony regarding the identity of an individual who allegedly robbed her at the Roswell Mall Cinemas."

During the Rule 31.1 hearing, Detective Anastasio testified that Susan Turner, assistant manager of the Roswell Cinema which was robbed of $2,000 during the late show on October 26, 1994, had identified Nowlin as the man with the gun. The court found the incident admissible based on this. When Turner took the stand, however, she testified that she could not identify the man who had the gun.

The court sustained Nowlin's objection to this testimony, admonished the prosecutor, and instructed the jury that "[t]he Court has completely and in totality excluded all of her testimony. You are to act in your deliberations as though she never took the witness stand. Any incident, any mention of anything dealing with Roswell, and a robbery, armed robbery in Roswell, will be totally excluded from your deliberations. It will be eradicated from your memory, and you will remember it no more is the instructions of this Court." The court denied Nowlin's renewed motion for mistrial.

Whether to grant or refuse a mistrial under these circumstances is a matter largely within the discretion of the trial judge which will not be interfered with absent a finding that a mistrial is essential to

the preservation of the right to a fair trial. *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315) (1982). Here, Turner did not implicate Nowlin and the court immediately took corrective steps. While we strongly disapprove of the State's lack of preparation of this witness or knowledge of its case, we find the trial court's instruction and rebuke of the prosecutor sufficient to remove any improper impression in the jurors' minds. *Schirato v. State*, 260 Ga. 170, 171 (4) (391 SE2d 116) (1990); *Willingham v. State*, 212 Ga. App. 457, 458 (442 SE2d 4) (1994).

*Judgment affirmed. Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 24, 1997 —
RECONSIDERATION DENIED MARCH 13, 1997 —

*Wolfe & Steel, Larry D. Wolfe*, for appellant.
*Daniel J. Porter, District Attorney, Jefferson B. Blandford, Assistant District Attorney*, for appellee.