A97A1393. KINGREE v. THE STATE.
(491 SE2d 123)

McMurray, Presiding Judge.

Defendant was charged in an accusation with violating the terms of his Habitual Violator Probationary Driver's License under OCGA § 40-5-58 (e) (4) "by operating a motor vehicle for a purpose other than business purposes." He moved to suppress based on the absence of a reasonable articulable suspicion for the police to stop his motor vehicle. Following the denial of that motion, defendant submitted to a bench trial on stipulated facts. The Superior Court of Newton County found defendant guilty, and this appeal followed. Defendant enumerates the denial of his motion to suppress and the sufficiency of the evidence. Held:

1. "While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous ([cits.]), where the evidence is uncontradicted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. [Cits.]" Vansant v. State, 264 Ga. 319, 320 (1) (443 SE2d 474). In the case sub judice, only the arresting officer testified at the suppression hearing, and his evidence would authorize the following facts:

Officer Chris Cain of the Covington Police Department was assigned to the Special Response Unit, which responds to calls in "high crime areas, drug areas, or burglary stakeout details." On the day in question, Officer Cain was on "active patrol . . . in Harristown[, after the department] had been receiving information of narcotics transactions occurring during the early to mid-morning hours." Officer Cain had personally received twenty-five or thirty reports over a nine-month period. The officer drove a marked patrol car with blue lights on the top. He observed a light blue station wagon, "which was making a turn on Hardwick Circle." Officer Cain also observed "two . . . males standing on the corner . . . and the vehicle pulled up. . . . These two . . . males were motioning for the vehicle to turn around — or to back up. . . ." In Officer Cain's experience, "it's common practice for people selling narcotics to have lookouts." These lookouts will "say five zero, 911, Dan-O, . . . things of that nature, to

let the people down the street know, as well as to signal them, that there's a police officer or law enforcement folks coming." Officer Cain affirmed he saw "such signals exchanged . . . between the people on the corner and the people in the vehicle." "Those two . . . males were standing there on the corner with their arms . . . in a motion which [Officer Cain] considered to be trying to tell somebody to back up."

The driver saw the officer and then "turned and backed up on Hardwick Circle." Officer Cain identified the driver as a white male, with "a black male in the passenger side." Officer Cain had to wait for traffic, and as he crossed the street, he saw the station wagon "sitting in the middle of the street. . . ." When the driver saw Officer Cain, he "started back in [the opposite] direction and passed [the patrol car]." Officer Cain observed "there was a black male that was running back between . . . two houses. . . ." That is, "when [Officer Cain] pulled around the corner [he saw] one occupant of the vehicle [and] another person running off to the left." That was "consistent with that area, as far as people [trying] to conceal activity by either running, . . . or backing up in a motor vehicle to put somebody out." The officer knew that "East Metro Narcotics has made several arrests down there, [including] some drive-up purchases of narcotics which have resulted in convictions. . . ." In Officer Cain's experience, "when folks run from a high crime area . . ., there's something they're trying to conceal."

Based on the totality of the circumstances, Officer Cain concluded he had just interrupted a possible drug sale. By the time he returned to the area, the two men on the corner were gone. Officer Cain "stopped the vehicle, asked the driver for his license and he [defendant] produced a[n] habitual violator probationary license."

2. "Although an officer may conduct a brief investigative stop of a vehicle (see *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979)), such a stop must be justified by 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968)." *Vansant v. State*, 264 Ga. 319, 320 (2), supra. The essential concept is "to take the totality of the circumstances into account and determine whether the detaining officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981)." Id. "[A] founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. During this detention, the police, for example, may attempt to determine the person's identity[ ] and ask for a display of driver's license and vehicle registration." (Citations and punctuation omitted.) *Nowlin v. State*, 225 Ga. App. 447, 448 (2), 449 (484 SE2d 14).

In the case sub judice, Officer Cain's stated suspicions were that he had interrupted an attempted purchase of narcotics. In our view, based upon the articulated facts, namely, the location where drug arrests previously had been made, the odd gestures of the two men on the corner, defendant's backing his car away upon espying the officer, the apparent flight of the passenger, when coupled with all rational inferences from those facts, authorized the trial court's conclusion that Officer Cain's suspicions of a possible drug sale were entirely reasonable and not arbitrary or harassing. Consequently, the trial court did not err in denying defendant's motion to suppress.

3. Based upon the stipulated evidence, including the fact that defendant's driving was unrelated to the limited lawful purposes of an habitual violator's probationary driver's license, the evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the trial court's judgment that defendant is guilty, beyond a reasonable doubt, of violating OCGA § 40-5-58 (e) (4) as alleged in the accusation.

*Judgment affirmed. Beasley and Smith, JJ., concur.*

DECIDED AUGUST 8, 1997.

*Strauss & Walker, John T. Strauss*, for appellant.
*Alan A. Cook, District Attorney, Jennifer E. Greene, Assistant District Attorney*, for appellee.